IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ORLANDO BACA,

        Petitioner,

  vs.                                            No. CIV 06-220 JB/LFG

ROBERT ULIBARRI, Warden, and
PATRICIA MADRID, Attorney General
of the State of New Mexico,

        Respondents.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1. This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed March 22, 2006. Petitioner Orlando Baca ("Baca") challenges the Order Revoking Probation and Imposing Judgment and Sentence entered December 27, 2004 by the Third Judicial District Court in State v. Baca, No. CR 2000-0840 (County of Dona Ana, New Mexico).

2. Respondents[2] submitted their Answer [Doc. 9], along with a Motion to Dismiss [Doc. 7] and Memorandum in Support [Doc. 8], all filed May 3, 2006. In their Motion to Dismiss,

---

[1] **Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.**

[2] In his Traverse, Baca informed the Court that he is no longer in the custody of Robert Ulibarri as he has been transferred to the Lea County Correctional Facility in Hobbs, New Mexico, and that his present custodian is James Janecka. [Doc. 10, at 1].

Respondents argue that the petition must be dismissed because Baca's claims were raised and decided in state court proceedings, and Baca has not shown that these proceedings resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented, as required under 28 U.S.C. § 2254(d).

3. Petitioner filed a "Traverse to the Response" [Doc. 10] on May 25, 2006, which the Court accepts as a response to Respondents' Motion to Dismiss. Respondents did not file a reply, and no further pleadings have been submitted. The Court finds that Respondents' Motion to Dismiss is fully briefed and ready for ruling. For the reasons given below, it is recommended that the Motion to Dismiss be granted.

## Factual and Procedural Background

4. On January 24, 2001, Baca pled no-contest and was convicted on a charge of Possession of a Controlled Substance, to wit: Heroin, a fourth degree felony, contrary to NMSA 1978 § 30-31-23(D) [Answer, Doc. 9, Ex. A]. On the same date, Baca entered into a Repeat Offender Plea and Disposition Agreement [Doc. 9, Ex. B] in which he agreed to plead no contest to the possession charge. In a section of the Plea Agreement labeled "Admission of Identity," he also admitted to three prior felony convictions.

5. The Plea Agreement included a provision advising Baca of the maximum penalty on the possession charge, *i.e.,* a basic sentence of 18 months incarceration followed by one year of parole. He was further advised that this basic sentence would be enhanced under the habitual criminal offender provision of New Mexico law. [Doc. 9, Ex. B, at 2]. That statute, NMSA (1978) § 31-18-17 provides in pertinent part that any person convicted of a noncapital felony who has incurred two

prior felony convictions is a habitual offender whose basic sentence shall be increased by four years; an offender with three or more prior felony convictions shall have his basic sentence enhanced by eight years.

 6. The Plea Agreement also included a section titled "Habitual Offender Proceedings," reading as follows:

> The defendant understands that the defendant will be subject to habitual offender proceedings based on the convictions listed under "Admission of Identity" if the defendant violates the law before completing the defendant's sentence in this case. The State may bring additional habitual offender proceedings against the defendant if the defendant violates any municipal, county, state or federal law of any jurisdiction after entry of this plea. The State may also bring additional habitual offender proceedings against the defendant if the defendant in any way violates the conditions of any probation or parole which the defendant is serving after entry of this agreement. The State may bring additional habitual offender proceedings if the violation is admitted or proven, regardless of whether the probation or parole is revoked or whether the defendant is convicted of the new crime.

[Doc. 9, Ex. B, at 3].

 7. On February 21, 2001, state district judge Lourdes A. Martinez accepted Baca's guilty plea and adjudged Baca guilty of the offense. Judge Martinez entered a Judgment and Order Partially Suspending Sentence [Doc. 9, Ex. A]. She sentenced Baca to 18 months incarceration on the possession charge and a term of one year on parole. She enhanced the sentence by four years pursuant to the habitual offender statute, for a total term of 5½ years of incarceration followed by one year of parole. She then suspended 18 months of the sentence, placing Baca on probation for 18 months after his release from custody, the probation to be run concurrently with the parole term. The total period of incarceration ordered, therefore, was four years, followed by 18 months of concurrent

parole/probation. This sentence was to run consecutively to a sentence Baca was already serving in a different case. [Doc. 9, Ex. A at 2-3].

  8. Baca was released from confinement on November 17, 2003. [Doc. 9, Ex. H, at 2]. In accord with her original sentence, Judge Martinez entered an Order of Probation[3] [Doc. 9, Ex. D], directing that Baca's probation was to begin on November 18, 2003 and run for a period of one year, five months and 28 days, ending on May 17, 2005. The Order further provided:

> You are hereby advised that under the law of the Court, it may at any time during the probation term issue a warrant for your arrest and your probation may be revoked if you violate any one of the conditions of this Order during the time of your probation.

[Doc. 9, Ex. D, at 2]. Baca acknowledged and signed this order as did his Probation Officer. Baca indicated that he had read the order, understood its terms, and agreed to abide by them.

  9. In July 2004, Baca's Probation Officer reported that Baca violated his probation by possessing or using heroin, failing to report to work and not telling his Probation Officer that he had been fired, and by absconding. On September 29, 2004, the District Attorney filed a Petition to Revoke Probation. The Probation Officer stated that Baca had not met with him since June 23, 2004 and that attempts to reach Baca were unsuccessful. [Doc. 9, Ex. E].

  10. In addition to the Petition to Revoke Probation, the State also filed a Supplemental Criminal Information (Habitual Offender Enhancement) on September 29, 2004, listing the three prior convictions which Baca had already acknowledged in the 2001 Plea Agreement, and charging him as a habitual offender. [Doc. 9, Ex. F].

---

[3] The record is unclear as to when this Order of Probation was issued, although the date is not material to the issues raised in this petition. The Order was filed in state court on February 2, 2004. However, the body of the Order reads "*Now, on this 13 day of December, 2001, . . .* [the court] places you under probation supervision. . . . [emphasis added]."

11. Baca was eventually apprehended and brought in to face probation violation proceedings. A sentencing hearing was held on December 21, 2004. As Judge Martinez had been appointed to the federal court, her successor, Judge Sylvia E. Cano-Garcia, inherited the case. On December 27, 2004, Judge Cano-Garcia entered an Order Revoking Probation and Imposing Judgment and Sentence on Baca. [Doc. 9, Ex. G]. Baca admitted that he violated his probation and admitted to the prior convictions. Judge Cano-Garcia ordered Baca's probation revoked. Baca was sentenced on the possession of heroin charge to a term of 18 months with one year of parole, enhanced by eight years pursuant to the habitual offender statute. Baca was given four years of confinement credit. He received further credit from November 18, 2003, the date he was placed on probation, through June 23, 2004, the date he absconded from probation; and additional credit from October 15, 2004, the date that his whereabouts became known to the Court, through December 21, 2004, the date of the sentencing hearing. Baca was re-incarcerated.

12. On August 8, 2005, Baca filed a Motion for Modification of Sentence in state district court. [Doc. 9, Ex. H]. In this motion he argued that, as of November 3, 2004, he was completely discharged from his one-year parole on the original possession charge; as evidence, he attached a copy of a Certificate of Discharge signed by the prison warden. He further argued that Judge Cano-Garcia exceeded her statutory authority by imposing the eight-year enhancement "without an underlying conviction."

13. The Motion for Modification of Sentence was summarily dismissed on November 23, 2005. [Doc. 9, Ex. I]. In the order of dismissal, Judge Cano-Garcia noted that Baca's 2001 Plea Agreement on the possession charge provided for imposition of a four-year habitual offender enhancement, but allowed the State to file an additional supplemental criminal information seeking

5

an eight-year enhancement if Baca later violated the terms of his probation. She noted further that the State did indeed file a Supplemental Criminal Information on September 29, 2004, and when Baca admitted in open court to violating his probation and being a habitual offender the Court then properly sentenced him as a habitual offender, awarding credit for time served and on probation. She concluded that the sentence as imposed was legal and appropriate.

14. Baca did not appeal this Order but instead, on the same day it was issued, filed a Petition for Writ of Habeas Corpus in state court. [Doc. 9, Ex. J]. In this petition, Baca raised the same issues he now raises in the current federal habeas petition.[4] In his state petition Baca alleged that he was denied due process of law in the December 2004 probation revocation proceedings because the Court lacked jurisdiction to sentence him and/or exceeded its sentencing jurisdiction. He based this claim on the Certificate of Discharge to which he referred in his Motion to Modify Sentence, arguing that this "final release and discharge from prison" terminated all court jurisdiction over him with regard to Cause No. CR-2000-0840. He also argued that the court's imposition of the eight-year habitual offender enhancement violated NMSA (1978) § 31-21-15(B), which restricts the court's options when a probation violation has been established. And he claimed he was denied effective assistance of counsel in that his attorney was unfamiliar with Section 31-21-15B and was unaware that the Certificate of Discharge terminated the court's jurisdiction over him.

15. On December 20, 2005, Judge Cano-Garcia dismissed Baca's petition for habeas relief. [Doc. 9, Ex. K]. The judge based her dismissal on the fact that the plea agreement which Baca signed in January 2001 specifically provided that the State may seek additional habitual offender

---

[4]Aside, that is, from his federal Claim One which he has since withdrawn; *see* Traverse to the Response [Doc. 10, at 2].

enhancement in the event Baca violated the conditions of his probation, and that is what occurred: "Petitioner alleges his Habitual Offender enhancement was illegally increased from four years to eight years. At sentencing on the Probation Violation Petitioner received the balance of his sentence, including enhancement pursuant to the Habitual Offender Statute, § 31-18-17, NMSA 1978, and credit for time served. This sentence enhancement did not violate double jeopardy. (State v. Freed, 121 N.M. 569 (Ct. App. 1996)." [Id., at 2-3]. She further held that the Certificate of Discharge which Baca received upon his release from prison did not deprive the court of jurisdiction, as his probation and parole were as yet incomplete. She also rejected Baca's claims of ineffective assistance of counsel.

16. On January 13, 2006, Baca filed a Petition for Writ of Certiorari [Doc. 9, Ex. L] with the New Mexico Supreme Court. In his petition he argued that the district judge who ruled on his habeas petition, the same judge who had sentenced him for probation violation, ignored Baca's argument that she exceeded the sentencing authority provided in NMSA § 31-21-15(B) which sets out the court's options upon probation revocation. He argued that a Plea Agreement cannot modify a court's sentencing jurisdiction; rather, that is a matter for the legislature.

17. On January 27, 2006, the New Mexico Supreme Court denied Baca's petition for writ of certiorari, without discussion. [Doc. 9, Ex. M]. He filed his federal habeas claim on March 22, 2006.

Claims Raised in the Federal Petition

18. Baca raises the following claims in his federal habeas petition:

Claim One: Violation of Right of Access to Courts. Baca bases this claim on allegations that prison officials confiscated his legal papers. This claim was not previously raised in state court.

However, Baca later withdrew the claim [*see* Doc. 10, at 2], and the Court therefore will not consider it either on the merits, nor as raising a "mixed petition" issue.

Claim Two: Denial of Due Process. Baca alleges in this claim that following revocation of his probation the judge imposed a sentence, including habitual offender enhancement, that was not authorized by the state statute dealing with procedures for handling probation violations, NMSA (1978) § 31-21-15(B).

Claim Three: Ineffective Assistance of Counsel. Baca alleges that the attorney who represented him in the probation revocation proceedings provided inadequate representation in that he did not assert the court's lack of jurisdiction, did not argue that Baca had already fully discharged his sentence, did not assert that the plea agreement was invalid as contrary to state law, and did not raise a double jeopardy claim.

Claim Four: Denial of Due Process. This claim is based on an asserted lack of *in personam* jurisdiction in the state court at the time of the probation revocation hearing, in light of Baca's allegation that he had already completed his sentence as evidenced by the Certificate of Discharge and by a calculation of his good time credits.

Claim Five: Double Jeopardy. Baca alleges that he was "punished twice for one conviction," once at the first sentencing in January 2001 and then a second time at the probation revocation hearing which, he asserts, occurred after he had fully completed his sentence.

## Standard of Review

19. Petitioner's claims were, for the most part, raised in the habeas petition he filed in state court. An issue adjudicated on the merits by the state courts is not cognizable in federal habeas proceedings, unless the petitioner can show that the state court proceedings resulted in a decision that

was contrary to or involved unreasonable application of clearly established federal law, or that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000); Mitchell v. Gibson, 262 F.3d 1036, 1045 (10th Cir. 2001).

20. This federal court "may not issue a habeas writ simply because we conclude in our 'independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gipson v. Jordan, 376 F.3d 1193, 1196 (10th Cir. 2004). "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials. Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution." Thompson v. Oklahoma, 202 F.3d 283 (Table, text in Westlaw), No. 98-7158, 2000 WL 14404, at *6 (10th Cir. Jan. 10, 2000); Scrivner v. Tansy, 68 F.3d 1234, 1238 (10th Cir. 1995).

21. The claims set out in Baca's federal habeas petition were not expressed in exactly the same form as the claims raised in his state petition. Nevertheless, each of these claims was discussed and adjudicated by the state district court, and rejected by the state supreme court on Baca's petition for certiorari. This court cannot say that these state court decisions violated clearly established federal law or were unreasonable in the sense set forth in Williams v. Taylor, *supra*. Baca has not been imprisoned in violation of the constitution, and his petition must therefore be denied.

Claim Two

22. In Claim Two, Baca alleges a denial of due process in that the judge who sentenced him in the probation revocation proceedings violated a state statute, NMSA 1978 § 31-21-15(B), which limits her options in probation revocation proceedings. That statute reads as follows:

> If the violation [of probation] is established, the court may continue the original probation, revoke the probation and either order a new probation with any condition provided for in Section 31-20-5 or 31-20-6 NMSA 1978, or require the probationer to serve the balance of the sentence imposed or any lesser sentence. If imposition of the sentence was deferred, the court may impose any sentence which might originally have been imposed, but credit shall be given for time served on probation.

23. The state district judge in this case chose to revoke Baca's probation rather than continue it, and opted to "require the petitioner to serve the balance of the sentence imposed." The "sentence imposed" in this case was the 18-month sentence of incarceration, suspended in lieu of 18 months probation, which was handed down in the January 2001 proceedings. Baca was still serving this suspended sentence -- that is, he was still on probation, which by court order was to run until May 2005 -- at the time he violated the terms of that probation and then absconded. The judge was authorized under the statute to require Baca to serve the balance of the 18-month sentence, with credit for time already served, and that is just what the judge did. She also applied the full eight-year enhancement for Baca's habitual offender status, which again is authorized under Section 31-21-15(B).

24. There was no statutory violation in the sentence which Baca received, nor was there any violation of due process. The state court so found, citing State v. Freed, 121 N.M. 569, 915 P.2d 325 (Ct. App. 1996), a case almost directly on all fours with this one:

> The statute [Section 31-21-15] provides the court with certain authority to modify a suspended or deferred sentence if the probationer violates a condition of probation. It does not foreclose the imposition of additional otherwise permissible sanctions for the acts that form the basis for revocation or modification of probation . . . Here, the State had authority under the habitual-offender statute to seek a further enhancement of Defendant's sentence but was prohibited from doing so originally because of a restriction in the plea

> agreement. Once that restriction was voided by Defendant's misconduct, the State could exercise its authority under the habitual-offender statute . . . . The judgment and sentence revoked Defendant's probation, separately adjudged him to be an habitual offender with two prior felony convictions, appropriately reimposed the original eighteen-month sentence for the underlying felony (as a consequence of his violation of the conditions of probation), and additionally enhanced the sentence by four years under the habitual-offender statute. The court's judgment and sentence was authorized by law.

State v. Freed, *supra*, 121 N.M. at 574.

25. This Court cannot say that the state court's ruling on this issue was unreasonable, nor that Baca's due process rights were violated. There is therefore no ground for federal habeas relief on Claim Two.

### Claim Three

26. In Claim Three, Baca alleges ineffective assistance of counsel. The state habeas court rejected a similar claim raised in Baca's state habeas petition, and the Court does not find this ruling unreasonable nor contrary to federal law. Baca's state petition did not phrase the ineffective assistance claim in exactly the same way as it is posed in the federal petition; nevertheless, to the extent any particular examples of the lawyer's claimed ineffectiveness were omitted from the state petition, they have been procedurally defaulted. Although this Court has the power to raise a state procedural bar *sua sponte*, it is not required to do so if, as is the case here, the claim is clearly without merit and may be swiftly resolved. Guzman v. Williams, 185 F.3d 874 (Table, text in Westlaw), 1999 WL 430059, at *3 (10th Cir. June 28, 1999).

27. None of the grounds raised by Baca would support an ineffective assistance claim. A petitioner alleging ineffective assistance of counsel has the burden of showing not only that his

counsel's performance was constitutionally defective, but also that counsel's errors prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Baca has not met that burden.

28. Baca contends that his counsel was ineffective in failing to assert the court's lack of jurisdiction under Section 31-21-15(B), failing to argue that Baca had already fully discharged his sentence, neglecting to assert that the plea agreement was invalid as contrary to Section 31-21-15(B), and failing to assert a double jeopardy claim. As discussed above in connection with Baca's Claim Two, there is no merit to Baca's argument that the court violated Section 31-21-15(B) in any way; his lawyer's failure to raise this argument did not, therefore, constitute ineffective assistance of counsel. United States v. Cook, 45 F. 3d 388, 392-93 (10th Cir. 1995); United States v. Kramer, 168 F. 3d 1196, 1202 (10th Cir. 1999) (it is not ineffective assistance to fail to pursue meritless theories).

29. The same is true with regard to the arguments that counsel performed inadequately in failing to argue that Baca had fully discharged his sentence at the time of probation violation, and failing to argue a double jeopardy claim. These issues are discussed below in connection with Baca's Claims Four and Five.

30. The state court found no ineffective assistance of counsel, and this ruling was upheld by the state's highest court. This Court likewise finds that the performance of Baca's counsel did not fall below constitutional standards and finds further that the state court's ruling in this regard was reasonable. The Court therefore rejects Baca's allegations of ineffective assistance.

### Claim Four

31. In his Claim Four, Baca asserts that the state court lacked *in personam* jurisdiction over him at the time of the probation revocation hearing, because he had already completed his sentence

at that time as evidenced by the Certificate of Discharge. This claim was raised in Baca's state habeas petition. The state district court found it to be without merit on grounds that the Certificate of Discharge did not constitute a final release which divested the court of all jurisdiction over Baca, given that his period of probation was not yet complete. [Doc. 9, Ex. K, at 2]. This conclusion was upheld by the state supreme court and this Court finds it was not unreasonable, nor does it conflict with established federal law.

      32. Baca argues repeatedly that the Certificate of Discharge served to terminate the court's jurisdiction. The Certificate of Discharge reads as follows:

> State of New Mexico Corrections Department, Central New Mexico Correctional Facility . . . . The New Mexico Department of Corrections issues this certificate of discharge from the imposed judgment and sentence [*i.e.*, that in CR-2000-0840] in accordance with Chapter 164, Section 4 31-13-1B of the State of New Mexico, that the named inmate be and is granted a final release and discharge from this institution . . . . Discharge/Release Date: November 3, 2004.

[Unnumbered attachment 2 to Doc. 9, Ex. H]. Baca was actually released from prison on November 17, 2003. He argues that this Discharge document sets out the date on which his sentence was completely fulfilled, taking into account all good time credits, and that because the court had not imposed sentence or revoked probation prior to November 3, 2004, it lacked jurisdiction to do so in December 2004, when the probation revocation hearing was convened.

      33. This argument ignores the fact that the Order of Probation [Doc. 9, Ex. D] in Baca's case provided that his 18-month term of probation was to run until May 17, 2005, "or until further order of the Court." The Discharge certificate is not a court order. It neither supersedes nor invalidates Judge Martinez's lawful sentence. The state courts ruled in Baca's habeas proceedings that his period

13

of probation had not expired at the time of the probation revocation proceeding in December 2004, and this Court defers to that ruling, which was based on its interpretation of state law.

34. Baca also ignores the fact that he violated his probation in June 2004, a time when everyone agrees he was still on probation, and that he was thereafter on absconder status for some period of time before he was apprehended and brought before the court for probation violation proceedings. Thus, is it apparent that the November 3, 2004 date set forth in the Certificate of Discharge was rendered inoperative by Baca's act of absconding, and even if we accept that at some point, someone in the prison system stated that his sentence would terminate in November 2004, Baca himself made this termination impossible by absconding before that day arrived. The Court does not decide these issues of state law but defers to the state court's ruling that Baca's sentence was still running at the time of the second sentencing. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991).

35. Baca's argument that the court lacked *in personam* jurisdiction is without merit, and the state court was justified in rejecting it. In addition, Baca's counsel was not ineffective in refusing to present it to the court.

## Claim Five

36. In Claim Five, Baca argues that he was "punished twice for one conviction" and this violated his constitutional protection against double jeopardy. Baca did not explicitly raise a double jeopardy claim in his state petition, although he did argue in that petition as follows: "While lacking subject matter jurisdiction of cause CR 2000-0840 and lacking in personam jurisdiction of Orlando Baca this Court took custody of Baca and imposed a new sentence upon him in CR2000-0840 on

14

December 21, 2004." [Doc. 9, Ex. J, at 2-3]. He further argued that "The Court changed the habitual offender enhancement from 4 years (imposed on Feb. 21, 2001) to eight 8 years. No new crimes were alleged nor committed." [Id., at 3]. The state habeas court apparently interpreted these arguments as raising a double jeopardy claim, since it ruled as follows:

> Petitioner alleges his Habitual Offender enhancement was illegally increased from four years to eight years. At sentencing on the Probation Violation Petitioner received the balance of his sentence, including enhancement pursuant to the Habitual Offender Statute, § 31-18-17, NMSA 1978, and credit for time served. This sentence enhancement did not violate double jeopardy. (State v. Freed, 121 N.M. 569 (Ct. App. 1996)."

[Doc. 9, Ex. K, at 2-3].

37. As noted above, the district court dismissed Baca's habeas petition, and his request for certiorari was rejected by the state's highest court. This Court determines that the double jeopardy issue was adjudicated by the state courts, within the meaning of federal habeas law, and therefore comes within the limited federal review standard of 28 U.S.C. § 2254(d) and Williams v. Taylor, *supra*. The Court further finds that the state court's ruling was not unreasonable, and there is no ground for federal habeas relief with respect to this claim.

38. The Double Jeopardy Clause prohibits successive prosecutions for the same offense, and multiple punishments for a single offense. United States v. Dixon, 509 U. S. 688, 695-96, 113 S. Ct. 2849, 2855 (1993). Here, Baca fails to establish that his right to protection from double jeopardy was violated. The United States Supreme Court explicitly holds that enhanced punishment for recidivist conduct does not violate the Double Jeopardy Clause: "The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense

15

because a repetitive one." Gryger v. Burke, 334 US. 728, 732, 68 S. Ct. 1256, 1258 (1948). *See also*, Gipson v. Jordan, 376 F.3d 1193, 1199 (10th Cir. 2004): "recidivist statutes do not punish the accused for previous offenses but rather 'the punishment is for the last offense committed, and it is rendered more severe in consequence of the situation into which the party had previously brought himself,'" *quoting from* Moore v. Missouri, 159 U.S. 673, 677, 16 S. Ct. 179, 181 (1895).

39. Baca appears to contend that the sentence he received upon parole violation violated double jeopardy because the judge gave him the full eight years' enhancement, whereas the earlier judge gave him only four additional years. The Court rejects this argument. In 2001, the trial judge enhanced Baca's sentence by four years, even though Baca's admission to three prior offenses could have subjected him to an eight-year enhancement under the statute. Respondent asserts that this lesser enhancement was negotiated as part of the plea agreement [*see*, Doc. 8, at 1-2: "with an agreed upon four-year enhancement rather then [sic] the standard eight-year enhancement"]. This was not expressly stated in the Plea Agreement, but Baca does not dispute this statement in his Traverse, and the Court accepts it.

40. In any event, it is clear that the sentencing judge in 2001 could have enhanced Baca's 18-month sentence by eight years, given his admission to three prior felonies. The fact that she chose not to do so does not raise a double jeopardy issue simply because another judge three years later determined that the statutory eight-year enhancement was appropriate upon probation revocation. This very argument was raised and rejected in the case of State v. Freed, cited by the state court in its denial of Baca's state habeas petition. In Freed, the court noted:

> What actually occurred, however, was the one felony was used as the basis for a one-year enhancement and the other was held in reserve to encourage Defendant to comply with the terms of his probation.

16

> Upon Defendant's violation of those terms, the original sentence was set aside and on resentencing the second prior felony was used to increase the enhancement to the appropriate level for two prior felonies. The second sentence was not tacked on to the first sentence; it *superseded* the first sentence. Defendant was given credit for the time he had already served pursuant to the original enhancement. Thus, in form and in substance the first sentence – which was the first use of the prior felony – was nullified so that . . . ultimately . . . no additional punishment [was imposed] on Defendant. [Emphasis in original].

State v. Freed, *supra*, 121 N.M. at 572.

    41. Baca also argues that the proceedings violated his protection against double jeopardy, because he had a "reasonable expectation of finality" in the original sentence as of November 3, 2004 when, he says, he was finally and completely discharged from that sentence. But the issue as to whether the Certificate had such effect is an issue of state law and was determined by the state court, which disagreed with Baca's interpretation of the import of the Certificate. As stated earlier, this Court defers to that ruling.

    42. In any event, it is clear that Baca did not have the sort of "expectation of finality" in the sentence he received in January 2001 which would have made it unfair, indeed unconstitutional, to impose the eight-year enhancement in 2004 when he was found to have violated his probation. There is no question that Baca was aware of the possible consequences of violating his parole, including the fact that the full eight-year enhancement could be ordered if his probation were revoked. Baca and his attorney signed the Plea Agreement, in which he acknowledged his understanding that he would be "subject to habitual offender proceedings based on the convictions listed under 'Admission of Identity' " if he were to violate the law, or violate any condition of his probation; and he further acknowledged in that document that "I understand that if the court grants me probation, a suspended

17

sentence, a deferred sentence or a conditional discharge, the terms and conditions thereof are subject to modification in the event that I violate any of the terms and conditions imposed." [Doc. 9, Ex. B, at 3, 4]. Baca was aware from the beginning that he could face the full enhancement if he violated his probation, and no "expectation of finality" was violated. State v. Freed, *supra*, 121 N.M. at 573; Montoya v. New Mexico, 55 F.3d 1496 (10th Cir. 1995) (deciding the issue as a matter of federal constitutional law).

43. For the same reason, the Court rejects Baca's argument that the State "chose to piecemeal its prosecution" and forced him to "serve a sentence in installments based on the same facts divided into fragments." [Doc. 10, at 9]. All three of the prior convictions which were cited in support of the eight-year enhancement in December 2004 were also cited in Baca's 2001 Plea Agreement. He was aware of them from the beginning, he admitted to them in 2001, and he acknowledged that additional habitual criminal proceedings based on these prior convictions could be instituted if he violated his probation. He cannot now claim that his expectations were violated.

44. Baca also claims that the court erred in using one of these prior convictions because it was over ten years old at the time he committed the offense of possession of heroin. He cites NMRA 11-609(B) in support of this argument. NMRA 11-609 is a rule of evidence which dictates when a conviction may be introduced into evidence at a civil or criminal trial for purposes of impeachment. The convictions at issue herein were not used in evidence at trial for purposes of impeachment; rather they were charged in procedures under the criminal code, and Rule 11-609 is not applicable.[5]

---

[5]While Baca did not raise this argument, he may be referring implicitly to the fact that the definition of "prior conviction" under the habitual offender statute was amended in 2002 to include a ten-year rule. However, this amendment was not applicable in Baca's case as he was originally sentenced in 2001, prior to the effective date of the amendment. State v. Ortega, 135 N.M. 737, 93 P.3d 758 (Ct. App. 2004).

45. In sum, the Court finds that the state courts' rejection of Baca's double jeopardy claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, nor was the decision based on any unreasonable determination of the facts in light of the pertinent evidence at the state court level. Claim Five is, therefore, rejected as a ground for federal habeas relief. In addition, Baca's counsel was not ineffective in failing to present a double jeopardy claim to the state court.

## Conclusion

46. The Court, having found that Baca's claims were adjudicated on the merits in state court and those state court rulings were correct and reasonable under the appropriate federal standard of review, recommends as follows:

## **Recommended Disposition**

That Baca's petition be denied, that Respondents' Motion to Dismiss [Doc. 7] be granted, and that the case be dismissed with prejudice.

*[signature]*
Lorenzo F. Garcia
Chief United States Magistrate Judge